**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-03105-TUC-JCH (BGM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Calletano Torres-Gallegos, | |
| Defendant. | |

Currently pending before the Court is Defendant's Motion and Memo to Suppress Non-Mirandized Statements (Doc. 76). The Government has filed its response and Defendant Torres-Gallegos replied. Govt.'s Response to Def.'s Mot. to Suppress (Doc. 84); Def.'s Reply Re Mot. to Suppress (Doc. 93). Defendant Calletano Torres-Gallegos is charged with one (1) count of conspiracy to transport illegal aliens for profit and four (4) counts of transportation of illegal aliens for profit in violation of §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i), and 1324(a)(1)(B)(iii), Title 8, United States Code. Indictment (Doc. 21).

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for oral argument and a report and recommendation. The Magistrate Judge recommends that the District Court, after its independent review, grant Defendant's motion.

. . .

. . .

. . .

. . .

I.   **FACTUAL BACKGROUND**[1]

On October 31, 2019, the defendant approached an immigration checkpoint on I-19 in Amado, Arizona driving a 2013 Freightliner tractor-trailer. United States Border Patrol Agent ("BPA") Loreto-Leyva asked the defendant if he had a shipment in his trailer, and the defendant responded that he did not. When asked if agents could x-ray his vehicle, the defendant responded in the affirmative. After being instructed to park the vehicle in the secondary inspection area, the defendant volunteered that his trailer was unlocked and that the agent could open it and look inside if he wished to do so. The defendant parked at the x-ray area and walked to the secondary waiting area, where BPA Cameron was located.

BPA Grijalva performed an x-ray scan of the vehicle and noticed anomalies in the cab of the semi-truck. He physically inspected the truck and discovered three (3) individuals hiding underneath a mattress. BPA Grijalva requested assistance and safely extracted the three (3) men before resuming his inspection of the areas where he had seen anomalies. He then found a fourth individual hiding in a cabinet behind the driver's seat. All four (4) men were determined to be illegally present within the United States.

BPA Grijalva called out on the radio to state that people were found hiding in the trailer and to place the defendant under arrest for alien smuggling. BPA Cameron instructed the defendant to stand up, turn around, and place his hands behind his back; the defendant complied. BPA Cameron placed him in handcuffs and asked in Spanish, "How many people are in the truck?" The defendant replied in Spanish: "Four." BPA Cameron relayed to the agents near the semitruck that there were four (4) people inside. The defendant was then placed in the rear seat of a Border Patrol vehicle.

. . .

. . .

. . .

---

[1] The facts are generally undisputed. The Government's facts are reiterated here as they are more complete, and BPA Cameron testified consistently with the same.

## II. ANALYSIS

Defendant asserts that his statement to BPA Cameron should be suppressed because *Miranda* warnings were not given. Def.'s Mot. to Suppress (Doc. 76) at 4–5. The Government asserts that Defendant's response falls within the public safety exception to *Miranda*'s exclusionary rule.

### A. *Miranda*—In General

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The Supreme Court of the United States has "recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'" *Moran v. Burbine*, 475 U.S. 412, 420, 96 S. Ct. 1135, 1140, 89 L. Ed. 2d 410 (1986) (quoting *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602, 1624, 16 L. Ed. 2d 694 (1966)). "To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused." *Moran*, 475 U.S. at 420, 96 S. Ct. at 1140. Specifically, the Court has found the Constitution requires "that a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "An officer's obligation to administer *Miranda* warnings attaches . . . 'only where there has been such a restriction on a person's freedom as to render him "in custody."'" *Stansbury*, 511 U.S. at 322 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).

The Supreme Court of the United States requires "that a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom

of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "An officer's obligation to administer *Miranda* warnings attaches . . . 'only where there has been such a restriction on a person's freedom as to render him "in custody."'" *Stansbury*, 511 U.S. at 322 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). "Custodial" means taken into custody or otherwise deprived of freedom of action in a significant way. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) The Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). This definition was refined to recognize that "'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297 (1980). As such, "'[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300, 100 S. Ct. at 1689.

### B. In Custody

"Custodial" means taken into custody or otherwise deprived of freedom of action in a significant way. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way."). "Two discrete inquiries are essential to the ["in custody"] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to

terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 465, 133 L. Ed. 2d 383 (1995). The Ninth Circuit Court of Appeals has further delineated that "[t]o determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide 'whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (quoting *Stansbury v. California*, 511 U.S. 318, 322, 144 S. Ct. 1526, 128 L. Ed. 2d 293 (1994)). The non-exhaustive list of factors considered by the court in *Kim* included: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Kim*, 292 F.3d at 974 (citations omitted). Subsequently, the Ninth Circuit Court of Appeals relied on several factors in assessing whether an in-home interrogation was custodial, including: "(1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made." *United States v. Craighead*, 539 F.3d 1073, 1084 (9th Cir. 2008). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323, 144 S. Ct. at 1529.

It is undisputed that Defendant was in custody at the time BPA Cameron asked him about the number of individuals in the semitruck.

### C. Public Safety Exception

The Supreme Court of the United States has recognized a "public safety exception" in which *Miranda* warnings are not required in "a situation in which police officers ask questions reasonably prompted by a concern for the public safety." *New York v. Quarles*, 467 U.S. 649, 656, 104 S. Ct. 2626, 2632, 81 L. Ed. 2d 550 (1984); *see*

*also Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002); *United States v. Brady*, 819 F.2d 884, 887 (9th Cir. 1987).  "The *Quarles* exception rests on the ease with which 'police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect.'"  *Brady*, 819 F.2d at 887–88 (quoting *Quarles*, 467 U. S. at 658–59, 104 S. Ct. at 2632–33).  The Supreme Court observed that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Quarles*, 467 U.S. at 657, 104 S. Ct. at 2632.  As such, "[i]n order for the public safety exception to apply, there must have been 'an objectively reasonable need to protect the police or the public from immediate danger.'"  *Roe*, 305 F.3d at 1050 (quoting *United States v. Carrillo*, 16 F.3d 1046, 1049 (9th Cir. 1994)).  Furthermore, "the availability of that exception does not depend upon the motivation of the individual officers involved." *Quarles*, 467 U.S. at 656, 104 S. Ct. at 2631.

The Ninth Circuit Court of Appeals has noted that "[i]n order for the public safety exception to apply, there must have been 'an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon.'" *United States v. Martinez*, 406 F.3d 1160, 1165 (9th Cir. 2005) (second alteration in original) (quoting *Quarles*, 467 U.S. at 659 n. 8, 104 S. Ct. 2626; then citing *Roe*, 305 F.3d at 1050; then citing *Carrillo*, 16 F.3d at 1049; then citing *Fleming v. Collins*, 917 F.2d 850, 854 (5th Cir. 1990)).  The Ninth Circuit has also recognized illegal drugs and needles to be encompassed by the *Quarles* exception.  *Carrillo*, 16 F.3d at 1049 (officer testified that he had suffered headaches and skin irritation from contact with illegal drugs and been stuck by needles during previous searches of detainees); *see also United States v. Bunnell*, No. CR-14-00119-001-PHX-DGC, 2014 WL 4259626, at *3 (D. Ariz. Aug. 29, 2014) (exception extended to include the drug Scopolamine which "could be fatal if inadvertently inhaled").

Here, the Government argues that "[t]he safety of people being smuggled was the

pertinent issue, and therefore, the public safety exception applies." Govt.'s Response (Doc. 84) at 3–4. This argument is without merit. The agents had already x-rayed the tractor-trailer and, based on the anomalies detected, found four (4) individuals. Furthermore, BPA Cameron's question was "investigatory and sought to elicit testimonial evidence[,] . . . [it was] not aimed at controlling an immediate threat to public safety." *Brady*, 819 F.2d at 888. Accordingly, the public safety exception does not apply, and Defendant's statement should be suppressed. His statement may be used, however, for impeachment. *See United States v. Gomez*, 725 F.3d 1121, 1125–26 (statements obtained in violation of *Miranda* inadmissible in government's case-in-chief, but admissible as impeachment evidence).

### III.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court GRANT Defendant Calletano Torres-Gallegos's Motion and Memo to Suppress Non-Mirandized Statements (Doc. 76).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR-19-03105-TUC-JCH**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 2nd day of April, 2021.

Honorable Bruce G. Macdonald
United States Magistrate Judge