**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-03105-001-TUC-JCH (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Calletano Torres-Gallegos, | |
| Defendant. | |

On December 2, 2021, the Court held a hearing on Defendant's request that the Court reconsider its denial of his request for a duress defense instruction and took the matter under advisement. (Doc. 145, 157.) As more fully set forth below, the Court denies Defendant's request for reconsideration.

**I.     BACKGROUND**

Defendant is charged with one (1) count of conspiracy to transport illegal aliens for profit and four (4) counts of transportation of illegal aliens for profit in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i), and 1324(a)(1)(B)(iii). (Doc. 21.) These charges stem from an immigration checkpoint inspection of a 2013 Freightliner tractor-trailer (the "Truck") Defendant was driving on October 31, 2019 on I-19. (Doc. 102 at 2.) At the secondary inspection area, Border Patrol Agent ("BPA") Grijalva performed an x-ray scan of the Truck and noticed anomalies in the cab. *Id*. After obtaining Defendant's consent to search the Truck, BPA Grijalva determined the anomalies were individuals hiding underneath a mattress. BPA Grijalva radioed to BPA Cameron to place

Defendant under arrest. (Doc. 104 at p. 2.)

On August 10, 2021, the Court held a pretrial conference at which Defendant submitted a duress defense proffer. *See* Docs. 115, 135. In an Order dated August 30, 2021, the Court set forth Defendant's duress defense proffer thusly:

> On October 31, 2019, while in Nogales, Arizona, Defendant decided to get an oil change, fix his lights, and fix a tire arm on his Truck. (Doc. 115 at 2.) After his Truck was repaired, he left and went to an old truck stop (the "Truck Stop") to buy some food. *Id*. At the Truck Stop, Defendant left his Truck without locking the door and went inside. *Id*. The Truck Stop did not sell food, so he returned to his Truck. *Id*. As he approached the cab of his Truck, Defendant saw a man approach around the back of his Truck's trailer. *Id*. The man came behind Defendant and put something solid to the back of his head. *Id*. Defendant believed it was a gun. (Tr. at p. 8, ll. 14-15.)
>
> The man told Defendant that he put four (4) "cabrones" in the Truck's cab and that he (Defendant) was going to "take them over the border whether he liked it or not." *Id*. The man claimed to know the address of Defendant's wife and mother in Washington state. (Doc. 115 at 2.) The man showed Defendant their addresses on his phone and told him if he did not cooperate, "they" would "kill his family" and that his "family was done." *Id*. at 2, 3.
>
> While Defendant's arms were up, the man behind him grabbed his phone and began making phone calls with it. *Id*. at 2. Two other men stood behind while the other man walked around the back of the Truck's trailer making phone calls. *Id*. at 3. Defendant heard the man on the phone say: "I already put the men in the truck. I found a dummy." *Id*. The two men who were standing behind Defendant told him not to move until the other man finished making the phone call. *Id*. The man making the phone calls had his phone for two hours. *Id*.
>
> The men told Defendant that they are going to follow him when he left. *Id*. Defendant was warned that one of the men in the cab of the Truck would report back to them if Defendant did or said anything. *Id*. The man who had Defendant's phone told him, "get the hell out of here and if you say anything at the checkpoint that I threatened you, your family is done." *Id*. Defendant took this to mean they would kill his family if he told the authorities about the four men in the cab of his Truck. *Id*.
>
> When Defendant got into his Truck, he could see three individuals laying under the bed compartment. *Id*. Defendant's items were "thrown out" and the

> bed was still lifted. *Id*. The fourth person was in the closet and that person closed the bed. *Id*.
>
> Defendant wanted to wait to get another load of freight to drive back to Washington, but as a result of being threatened and out of fear for his family, he felt he had to follow the directions of the men who came up behind him and put the four men in his Truck. *Id*. The men were eventually going to tell Defendant where to go since they had his phone number. *Id*. Defendant proffered that the three men who held him up returned to Mexico when they saw Defendant get stopped at the United States Border Patrol checkpoint. *Id*. Defendant has never heard from these men since the events of October 30, 2019. *Id*. At the time of his arrest, Defendant did not tell border patrol agents about the threats he received because he was afraid the threats would be carried out. *Id*.

(Doc. 139 at 2-3.) (footnotes omitted). The Court found that Defendant failed to establish that he faced an immediate threat of death or serious bodily injury and that he lacked a reasonable opportunity to escape the threatened harm and thus denied his request for a duress defense instruction. *Id*. at 4-11.

On September 30, 2021, Defendant moved the Court to reconsider its August 30th Order denying his request for a duress defense instruction arguing that he had received threatening text messages that had not been presented to the Court. (Doc. 140.) The Court denied the motion and ordered Defendant to personally appear on December 2, 2021 and present all newly discovered evidence in support of his request that the Court reconsider its August 30th Order. (Doc. 145 at 5.)

## II.   THE DECEMBER 2ND HEARING

At the December 2nd hearing, defense counsel avowed that the Court's summation of Defendant's factual proffer set forth in its August 30th Order is correct and that the Court applied the proper legal standard. On counsels' stipulation the Court admitted AT&T telephone records marked as Government's exhibits 1, 2 and 3. Exhibit 1 is AT&T subscriber information. (Ex. 1.) Exhibit 2 is AT&T phone records from August 1, 2021 to August 31, 2021 relating to the phone number ending in -2450. (Ex. 2.) Defendant testified that the phone number ending in -2450 is his phone number. Exhibit 3 is AT&T phone records from August 1, 2021 to August 31, 2021 relating to the phone number ending in -

8575. (Ex. 3.) Defendant testified that the phone number ending in -8575 is his wife's phone number. The Court also admitted defense exhibits 10 and 11. Exhibit 10 is a copy of text messages that Defendant received on August 23, 2021. (Ex. 10.) Exhibit 11 is a transcript of a voicemail message that Defendant received on November 29, 2021. (Ex. 11.)

Defendant testified that on August 23, 2021, he received threatening text messages from a Mexican telephone number. (Ex. 10.) The text messages are in Spanish and they were read[1] into the record in English by the Court's interpreter. The text messages generally threaten Defendant or his family with harm if he testifies at trial consistent with his claim that on October 31, 2019, unknown men put illegal aliens in his Truck in Nogales, Arizona, and forced him to transport them through the United States border patrol checkpoint. For instance, some messages state, "I'm keeping a close eye on you, I know where you live, and you better not say anything" and "I haven't done anything to you because I always let know (*sic*) that you were free and out, but I was told that you were going to go to trial and you better keep your mouth shut." Another message states, "The same way I found you in Nogales, Arizona, that same way I will come and find you in Yakima and I will beat you up…and this is just a warning." (Ex. 10.) Another message states, "It's just a warning." *Id.*

Defendant also testified that on November 29, 2021, he received a voicemail message in Spanish[2] from a Mexican telephone number.[3] As with the text messages, the voicemail generally threatens Defendant and his family with harm if Defendant testifies consistent with his claim of duress at trial. A portion of the voicemail states, "…My boy was behind you, no malice, and we already have you well located…it is better to shut your mouth because everything is lost you understand over there I sent you some messages so that you'll understand that with us you do not play, do not be playing…do not go do your…to talk about us, I know you don't know us, but we know you well, we know where

---

[1] Defense counsel agreed to the Court's interpreter reading the Spanish text messages into the record in English.
[2] Defense counsel's legal assistant translated the Spanish voicemail into English. *See* Ex. 11.
[3] The text messages and the voicemail came from different Mexican telephone numbers. *See* Exs. 10, 11.

you live and we have a good location for you and your family…[.]" (Ex. 11.)

### III.   ANALYSIS

As explained below, the Court finds the additional evidence that Defendant proffers does not change the Court's original conclusion because it too fails to establish the three elements necessary to make a prima facia showing of duress. To establish a prima facia showing of duress a defendant must establish: (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm. *See United States v. Ibarra-Pino*, 657 F.3d 1000, 1004 (9th Cir. 2011). As with its August 30th Order, the Court focuses its analysis only on the first and third elements: immediacy and opportunity to escape. *See* Doc. 139 at 4.

The Court begins with the immediacy element. As explained in the August 30th Order, "[t]o establish the element of immediacy, a defendant must make a prima facia showing that the defendant completes the illegal action under a threat of immediate harm to the defendant or the defendant's family." *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008). "Under this test, the threat to the defendant or the defendant's family must be 'present, immediate, or impending[.]'" *Id.* (quoting *United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984)). For a threat to be immediate, "a threat must be specific: 'A veiled threat of future unspecified harm will not satisfy this requirement.'" *United States v. Chi Tong Kuok*, 671 F.3d 931, 948 (9th Cir. 2012) (internal quotations omitted). The threat "may be express or implied, so long as it is an immediate threat as distinguished from generalized fear." *United States v. Navarro*, 608 F.3d 529, 533 (9th Cir. 2010). The threat must be such "that the defendant's persecutors 'figuratively held a gun to his head' (or to his family's heads) compelling the defendant to commit the illegal action." *Vasquez-Landaver*, 527 F.3d at 802 (quoting *United States v. Shryock*, 342 F.3d 948, 988 (9th Cir. 2003)).

The text messages, sent on August 23, 2021, and the voicemail, received on November 29, 2021, fail to support the claim that Defendant committed the alleged illegal alien smuggling on October 31, 2019 under an immediate threat of harm to him or his

- 5 -

family. While the texts and voicemail threaten Defendant and his family with unspecified harm, they do not threaten him with harm if he refuses to smuggle the illegal aliens. Indeed, the illegal aliens were smuggled over two years ago. Instead, the texts and voicemail threaten Defendant or his family with harm if he ***testifies at trial*** that he smuggled the illegal aliens under duress.

As the forgoing case law makes clear, the immediacy element is concerned with threats that "compel[] the defendant to commit the illegal action." *Vasquez-Landaver*, 527 F.3d at 802. The Court finds that the text messages sent almost two years after Defendant is alleged to have committed the illegal smuggling and a voicemail received over two years after Defendant is alleged to have committed the illegal smuggling are not relevant and are thus inadmissible. *See* Fed. R. Evid. Rule 401(a) (evidence is relevant if is has any tendency to make a fact more or less probable than it would be without the evidence); Rule 402 (irrelevant evidence is not admissible). The Court understands that the text messages and voicemail may bolster Defendant's credibility with respect to his claim that he transported the illegal aliens through the checkpoint under duress. However, the Court has already assumed the truth of Defendant's initial proffer and nonetheless found that he failed to establish the immediacy requirement. *See* Doc. 139 at p. 4. Although the additional evidence taken as true further supports Defendant's initial proffer, it does not provide new facts or information sufficient to establish the immediacy element of a duress defense.

Having failed to establish the immediacy element, the Court need not engage in any further analysis. *See United States v. Becerra*, 992 F.2d 960, 964 (9th Cir. 1993) (where a defendant is unable to make a prima facia showing of all three elements of the duress defense, the court should exclude evidence of the duress defense). Nonetheless, the Court also determines that Defendant has failed to establish that he had no reasonable opportunity to escape any threatened harm on October 31, 2019. As explained in the Court's August 30th Order "[t]he opportunity to surrender to authorities on reaching a point of safety presents an opportunity to escape the threatened harm." *Ibarra-Pino*, 657 F.3d at 1005. "A defendant takes the opportunity to escape the threatened harm where the defendant cooperate[s] with authorities at the first opportunity to do so without alerting an observer

- 6 -

and submit[s] to authorities at the first reasonable opportunity by consenting to a search." *Ibarra-Pino*, 657 F.3d at 1006 (internal quotations omitted).

Defendant fails argue that the texts and voicemail support a finding that he had no reasonable opportunity to escape any threatened harm on October 31, 2019. Stated another way, Defendant fails to offer the Court any grounds for reconsidering its finding that Defendant failed to establish that he had no reasonable opportunity to escape any threatened harm on October 31, 2019. *See* Doc. 139 at 11 (finding "no evidence from which a reasonable juror could conclude that Defendant took advantage of the opportunity to escape when he reached the CBP checkpoint"). Ultimately, when Defendant reached the checkpoint, he could have alerted the CBP officers to the aliens hidden in his Truck without facing any immediate danger to himself.

### IV.   CONCLUSION

The Court finds that the additional evidence presented at the December 2nd hearing is insufficient to establish a prima facia showing of duress. Accordingly,

**IT IS HEREBY ORDERED DENYING** Defendant's request that the Court reconsider its August 30, 2021 Order denying his request to present a duress defense at trial and **AFFIRMING** the Court's August 30, 2021 Order.

Dated this 7th day of December, 2021.

_____
Honorable John C. Hinderaker
United States District Judge